ELLIOTT N. KANTER (SBN: 95054)
LAW OFFICE OF ELLIOTT KANTER
A Professional Corporation
110 West A Street, Suite 950
San Diego, CA 92101
Telephone: 619-231-1883
Facsimile: 858-216-2689
Email: ekanter@enkanter.com

**Attorney for Plaintiff, JOHN MOFFITT**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MOFFITT,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, SAN DIEGO COUNTY JAIL, CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT, and DOES 1 to 100, inclusive,<br><br>　　　　Defendants | Case No.: 24-cv-1445-MMA-DDL<br>Related Case: 24-cv-1447-MMA-JLB<br><br>**SECOND AMENDED COMPLAINT**<br><br>**I. VIOLATION OF CIVIL RIGHTS (42 USC § 1983)**<br>**II. NEGLIGENCE- PROFESSIONAL**<br>**III. EXCESSIVE FORCE**<br><br>**DATE:**<br>**TIME:**<br>**JUDGE:** 　　HON. MICHAEL M. ANELLO<br>**COURTROOM:** 3C<br>**MAGISTRATE:** HON. DAVID D. LESHNER |

　　　　Plaintiff alleges:

**I.**

**INTRODUCTION**

The San Diego County (SDC) operates the San Diego County Jail (SDCJ) whose medical facilities are under contract by the Sheriff's Department's Medical Services Division (SDMSD). The San Diego County Sheriff's Department (SDCSD) is the chief law enforcement agency in San Diego County. The San Diego Police Department (SDPD) is the chief law enforcement agency in the city of San Diego. These parties joined in the arrest, detention, and further

1

mistreatment of Plaintiff John Moffitt. As set forth more fully herein, the full extent of Mr. Moffitt's injuries is not yet known. By disregarding Defendant SDMSD's history of providing sub-standard medical care to prisoners by its medical staff and allowing the Sheriffs determine if the plaintiff needed medical care, and Defendant SDC had and continues to have a policy of subjecting prisoners to medical abuse.

## II.

## JURISDICTION

1. This is an action brough under 42 U.S.C. § 1983 to recover damages against Defendants for violation of Plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Fourteenth Amendments to the Constitution of the United States; under 42 U.S.C. § 1988 (attorney's fees); and under California Civil Code, § 1714, subd. (a), as hereinafter more fully appears and the California Constitution.

2. Public policy in favor of holding public employees accountable for mistreatment of prisoners and the public is found in California Government Code§§ 844.6 (d) (liability of public employees) and 854.8 (d) (liability of public employees), and in California Penal Code§ 2650, et seq. (mistreatment of prisoners).

3. Plaintiff is informed and believes and thereon alleges that each individual defendant is, and at all relevant times was, a citizen of the United States and the State of California.

4. The jurisdiction of the San Diego Superior Court is proper since Plaintiff's damages total more than $35,000 in the principal amount and all of the incidents occurred in San Diego County.

5. Venue. Pursuant to Code of Civil Procedure section 394, the proper jurisdiction is San Diego County.

6. Plaintiff presented by delivering to the clerk of the board for San Diego County claims for the injuries, disability, losses, and damages suffered and incurred by him by reason of the occurrences described herein, all in compliance with the requirements of California Government Code, Section 905. Plaintiff also presented a claim for injury to the City of San Diego concerning the use for canine force on the plaintiff.

2

7. SDC rejected the claims in their entirety. The City of San Diego also rejected the claim in its entirety.

## III.

## PARTIES

8. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.
9. Plaintiff JOHN MOFFITT is, and at all relevant times was, a citizen of the United States and the State of California and was residing in the City of San Diego.
10. At all relevant times, each of the individual Defendants is or was an officer, agent, servant, employee, or contractor of the County of California and/or the City of San Diego acted within the course and scope of his or her employment and under color of law.
11. For civil rights violations, individual Defendants are sued in their individual capacities only. Regarding the state law claims, each Defendants is sued in their official and individual capacities.
12. SAN DIEGO COUNTY (SDC) is, and at all relevant times was, a county in California operating the Sheriff's Department's Medical Services Division (SDMSD). SDMSD had a duty to provide medical care to inmates. SDC and the SDCSD had a duty to employ, contract with, and grant hospital privileges only to qualified, competent physicians and other medical personnel. Regarding the treatment of SDMSD inmates, Defendants are state actors who act within their agency/contract when they harmed Plaintiff. SDC is vicariously liable for the harm caused by Defendants. In taking, or omitting to take, the actions herein, SDC is carrying out a policy that deprives Plaintiff of his constitutional rights. That policy is to ignore and deny treatment to prisoners and to ignore what the consequence of such negligence says about the competence of SDC medical treaters. In 2022 a Federal Class-Action suit was filed against the County of San Diego for the medical maltreatment of prisoners. This complaint placed the County on notice that they had a collective failure to provide adequate medical and mental health care along with

3

substandard living conditions for incarcerated people in the county jail. These conditions and policies existed when the plaintiff was incarcerated in January of 2023.

13. San Diego County residents are unnecessarily suffering and dying in the County's jail facilities ("the Jail") due to extraordinarily dangerous and deadly conditions, policies, and practices that have been allowed to persist for many years. While the death rate in the Jail has for years exceeded the rates nationally and in other large California jails, it reached chilling heights in 2021 when 18 people died, amounting to a death rate of 458 incarcerated people per 100,000. The Jail's death rate in 2021 was almost triple the national rate in jails—154 per 100,000 people— according to the most recent data from the Bureau of Justice Statistics, and more than double the 2011-2020 death rates in other large California jails. New York City's Rikers Island—which has received widespread national media attention and has a larger average daily population than the San Diego County Jail—had fewer deaths (16) than the San Diego County Jail (18) last year. The crisis at the Jail is not a new development. Since 2009, the Jail has averaged more than one death per month, for a total of at least 173 in-custody deaths since 2009. The California State Auditor's February 3, 2022 report ("State Audit Report") found that for years, "the Sheriff's Department has failed to adequately prevent and respond to the deaths of individuals in its custody."[1] Observing that "systemic deficiencies" in Jail policies and practices for "intake screenings, medical and mental health care, safety checks, and responses to emergencies likely contributed to these deaths,"[2] the State Auditor warned that until meaningful changes are made, "the weaknesses in [the Sheriff's Department's] policies and practices will continue to jeopardize the health and lives of the individuals in its custody.

14. County Defendants and their medical and mental health contractors Correctional Healthcare Partners, Inc., Tri-City Medical Center, Liberty Healthcare, Inc., Mid-America Health, Inc., and Logan Haak, M.D., Inc. ("Contractor Defendants") knowingly provide inadequate security, medical care, mental health care, and dental care to the

4

individuals incarcerated (hereinafter, "incarcerated people") in the Jail, which exposes incarcerated people to substantial, unreasonable, and life-threatening risks of harm.

15. Plaintiff seeks damages under the United States and California constitutions against the County and Contractor Defendants for their deliberate indifference to their obligation to provide incarcerated people with minimally adequate medical care. The Jail suffers from chronic and dangerous understaffing of medical professionals. In December 2020, nurses at one Jail facility wrote, in a desperate request for "any kind of help we can get," that understaffing was "putting our licenses in danger not to mention patient care," and asked command staff to "understand that people's lives are put at risk" by understaffing. An October 2021 letter from the Service Employees International Union ("SEIU") Local 221, which represents Jail health care workers, to the Citizens Law Enforcement Review Board ("CLERB") explained that understaffing created "dangerous and inhumane" conditions for incarcerated people and medical staff alike. As of late 2021, 216 medical positions at the Jail—more than 41% of authorized positions—remained vacant, and existing medical staff have been on mandatory overtime for weeks. Compounding the problem, custody staff, rather than health care professionals, can and do make final decisions about the health care services that incarcerated people receive. People at the Jail are not adequately screened for medical needs and do not timely receive essential medication or treatment. All of these conditions existed when Mr. Moffit was incarcerated in the county jail in or around January of 2023.

16. Even on January 1, 2023, the above issues had not been taken care of in any meaningful manner. Mr Moffit was brough into the county jail facility with open wounds to his injured arm. This condition exposed him to the infections that occurred and ultimately resulted in extensive hospitalizations. He continually asked for medical attention, was denied that attention by the medical staff. He repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care. The custodial staff repeatedly denied said requests stating he did not need that care. When he was provided

5

medical care, the medical staff did not deem it necessary to provide proper care nor to send him to the hospital for the care he needed.

17. Each individual Defendant, including Doe Defendants, is an agent, servant, employee, or contractor for SDMSD and the City of San Diego. In doing the acts herein described, these Defendants were acting, within the course and scope of Defendant's authority as such an agent, servant, employee, or contractor and with the permission and consent of co-defendants and employees of SDMSD and the City of San Diego and under their supervision and control.

18. Plaintiff is informed and therefore believes and, on that basis, always alleges that and places mentioned herein each of the individual Defendants was the contractor agent, representative, and/or employee of the remaining Defendants, and was always and place mentioned herein acting within the purpose and scope of said agency, representation, and/or employment.

19. The names of officers, managing agents, contractors, health care providers, staff, correctional officers, and other SDMSD and City of San Diego personnel involved in the events out of which this complaint arises, and those officers, staff and personnel responsible for supervision, training, and determination of policy whose acts or omissions were material to the injuries complained of herein, are at this time unknown to Plaintiff. Plaintiff will amend the complaint to allege the true names and capacities when ascertained and claims are exhausted. Plaintiff is informed and believes and, on that basis, alleges that each of the unnamed Defendants is liable for the acts and omissions set forth herein which proximately caused damages and injuries to Plaintiff.

## III.
## FACTUAL HISTORY

20. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.

21. Plaintiff, Mr. Moffitt, was fast asleep in his own home when he suddenly awoke to the San Diego Police Department busting his door down. It was New Years Day. The police

knew he had been out late New Years eve because of the reports they received that dealt with the reason he was being arrested.

22. Without SDPD first searching Plaintiff's apartment, they let their K-9 unit loose on him. Said canine bit Mr. Moffitt and did not release him from that grip in a timely manner.

23. Mr. Moffitt suffered serious bite wounds.

24. After being arrested, Mr. Moffitt was transferred to the San Diego County Jail.

25. While incarcerated, Mr. Moffitt's wounds were ignored, causing infection. San Diego County Jail staff repeatedly ignored medical orders and advice, nearly costing Mr. Moffitt his life.

26. Mr. Moffitt's infection led him to becoming septic and he was finally transferred to an outside medical facility where he was hospitalized for weeks.

27. Mr. Moffitt's arm was nearly amputated, requires further medical attention, and he has suffered severe physical and emotional damage.

28. The full extend of Plaintiff's injuries has yet to be determined. When the full extent of the damages is determined, Plaintiff will amend the complaint to so state if necessary.

## IV.

## GENERAL FACTUAL ALLEGATIONS

29. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.

30. Several potential defendants employed by both the County of San Diego at the jail facility and City of San Diego with SDPD are unknown at this time but are responsible for the respective acts alleged in this complaint.

31. All Defendant agencies are funded by the taxpayers of California.

32. Sheriff's Department's Medical Services Division is the medical division of the correctional facility wherein Plaintiff was incarcerated, which is operated by the California Department of Corrections and Rehabilitations and the San Diego Sheriff's Department and located in San Diego County.

7

33. This is a complaint for money damages brought in response to the acts and omissions that deny Plaintiff his civil rights, and in response to the negligence of Defendants, officials, employees, and contractors of SDPD, SDSD, and SDMSD, in failing to carry out required duties in violation of, and in deliberate indifference to, the legal rights of Plaintiff that led to the loss of Plaintiff's health, security, and personal safety as set forth herein.

34. Plaintiff hereby demands a jury trial.

## V.

## FIRST CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS
## (42 U.S.C. § 1983)

35. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.

36. During all relevant times, each identified Defendant City of San Diego through the San Diego Police Department were acting under color of law by acting or purporting to act in the performance of customs or policies or official duties under state, county, or municipal law, ordinance, or regulation.

37. The City of San Diego, through its police department improperly had their canine enter Mr. Moffitt's apartment and improperly allowed the canine to bite Mr. Moffit's arm. Due to the serious canine bite, Mr. Moffit had to go to a medical center for treatment.

38. While under the protection of Defendant County of San Diego and in the jail facility, Plaintiff faced serious safety and medical needs and a substantial risk of serious harm if those needs were not met.

39. Each Defendant, especially the San Diego Police Department knew that a failure to properly arrest and to properly use reasonable force to effectuate that arrest, Plaintiff would injure Plaintiff.

   Defendant Conty of San Diego knew that a failure to correctly diagnose, plan, and carry out the necessary treatment for Plaintiff's wounds would lead to a worsening of Plaintiff's condition.

8

40. Defendant County of San Diego, failed to competently treat Plaintiff. Plaintiff's condition became life-threatening, and he nearly lost his arm, among other serious complications.
41. At all relevant times, each Defendants, and each of them, knew of the substantial risk of serious harm to Plaintiff's health and safety if they failed to follow proper arrest procedures, and to correctly diagnose and treat bite wounds, and they intentionally disregarded that risk with deliberate indifference.
42. At all relevant times, SDC and the City of San Diego and its employees were acting under color of state law that Defendants have customs or policies which amount to deliberate indifference to their constitutional rights. SD County was deliberately indifferent to Plaintiff's health and safety for the policy to disregard proper care for prisoners, Plaintiff would not have suffered the harm alleged herein.
43. The City of San Diego, through its police department, failed to act to prevent Defendants from engaging in excessive and forceful police practices.
44. The deficiency and omissions caused Defendants to deprive Plaintiff of his constitutional rights as follows:
45. When the police officers came to the plaintiff's apartment, they did so in a way that would not warn or awaken the plaintiff, if the plaintiff was sleeping early in New Years morning. The police apparently contacted a manager of the facility and did not ask where the bedrooms were. In this case the bedrooms were in the back of the apartment. According to the police report, they eventually entered the apartment with an electronic fob provided to them by the management of the apartment. Prior to entering the apartment, they did not hear anything from the plaintiff. They did not assess whether the plaintiff was present, was asleep, or awake…Given there were several officers present, they simple sent a police dog to find anyone in the apartment, knowing that if anyone was present the police dog would bite them and therefore severely injure them. At the time of the attempt to arrest, plaintiff had not presented to the officers any reason that he would present a danger to them. Mr. Moffit did not threaten the officers, did not lunge at the officers, did not yell or do anything while in the apartment that would lead a reasonable

9

officer to believe his well-being was at risk. Further, when the police officers arrived at the plaintiff's bedroom, they permitted the dog to continue to bite Mr. Moffit for a substantial period causing additional harm to Mr. Moffitt. Since Mr. Moffitt was not an imminent threat to the officers, the use of a dangerous animal to subdue a sleeping man was in and of itself an excessive use of force and a violation of Mr. Moffitt's constitutional rights to be free from the use of excessive force during an arrest,

46. The City of San Diego engaged in conduct that showed a reckless or callous indifference to the deprivation by Defendants of the rights of others. They did this as follows: 1. The City of San Diego, through the SDPD, without proper cause and without confirming that the plaintiff heard the police attempt to enter the apartment, sent their canine into the apartment and viciously bit plaintiff causing serious injuries. As alleged above in paragraph 45, Plaintiff was asleep when the police dog entered the apartment, plaintiff was not a danger to anyone at that time and the use of a police dog that can cause great bodily injuries and indeed caused great bodily injuries to plaintiff. Since plaintiff was not a danger to the police officers while asleep in his bedroom, the use of a dog trained to bite first and have the officers ask questions later is a violation of a section 1983 claim.

47. Defendants subjected Plaintiff to the harms now suffered with deliberate indifference to Plaintiff's health and safety. The police did not utilize a less reasonable forceful manner to arrest Mr. Moffitt.

48. Individual Defendants, and each of them, violated Plaintiff's Fourteenth Amendment rights.

49. Plaintiff is informed and believes, and thereon alleges, that individual Defendants and other managing agents at SDMSD, knew that Defendants with responsibility for providing medical care and treatment to Plaintiff properly were capable of providing that care and treatment to Plaintiff without regard to an excessive risk to Plaintiff's health and safety and knew that Defendants' acts or omissions would lead to an excessive risk of harm to Plaintiff and disregarded that risk. Despite that knowledge, individual Defendants and other managing agents for SDMSD failed to ensure proper medical care

and treatment. In doing so, Defendants implemented a policy that repudiated Plaintiff's constitutional rights. That policy was unconscionable. As stated in paragraphs 14-17 Defendants policy in treating injured prisoners was clearly either intentional or acts of deliberate indifference to plaintiff's constitutional right. In Mr. Moffit's case as stated above, when he complained that his serious dog bite injuries were getting worse, the sheriff's ignored him, then delayed access to medical treatment. Once he was provided access to medical treatment, his injuries were significantly worse. Still, when he saw any medical provider, they did not provide adequate care, nor did they timely send him to the hospital. Since it was obvious that his dog bite injuries were infected and needed 1. Being taken to the medical staff at the jail, and 2. Being sent to a hospital to treat severe infections, this amounted to more than simple negligence but a deliberate indifference to Mr. Moffit's deteriorating medical condition.  This policy of having the custodial employees i.e. Sheriffs determine who is sent to the medical staff is essentially practicing medicine without a license but violates Mr. Moffit's constitutional rights under section 1983.

50. As a direct and proximate result of individual Defendants', and each of their, deliberate indifference, Plaintiff suffered physical damage to his body and emotional pain, suffering, and loss of enjoyment of life. Plaintiff is informed and believes and thereon alleges that the injuries result in some permanent disability for him.
51. As a direct and proximate result of all the Defendants' actions herein alleged Plaintiff has incurred, and will continue to incur into the future, medical and related expenses.
52. As a direct and proximate result of all the Defendants' actions herein alleged, Plaintiff is entitled to an award of compensatory damages for injuries suffered in an amount according to proof at trial.
53. As a direct and proximate result of all the Defendants' actions herein, Plaintiff has suffered general damages in an amount according to proof at trial.
54. Plaintiff is entitled to recover his attorney's fees and costs of suit.

55. The full number of damages is not known to Plaintiff yet. Plaintiff will move to amend this complaint to state such amount when the same becomes known to him, or on proof thereof at trial.

## VI.
## SECOND CAUSE OF ACTION
## NEGLIGENCE - PROFESSIONAL

56. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.

57. California law states, "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, ..." (Civ. Code, § 1714, subd. (a).)

58. Defendant's employees and agents whose names are currently unknown and will be added as DOES had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise when arresting Plaintiff and when diagnosing and treating Plaintiff.

59. Defendant City of San Diego breached that duty by failing to ensure that Plaintiff's apartment was properly searched before allowing the K-9 unit into his apartment. The City of San Diego did not have the dog retreat once it was seen that Mr. Moffit was not a danger to anyone. The City of San Diego was negligent because Mr. Moffit was not a danger to anyone at the time of the arrest. The fact that he did not respond (because he was sleeping) did not make the intrusion into his apartment more dangerous. There wasn't any information that a firearm had been used the previous evening. There wasn't any information that he was going to resist arrest, fight the officers, not follow their instructions. Instead, the officers negligently presumed that he would be violent and sent the vicious dog to bite Mr. Moffitt.

60. Furthermore, Defendants County of San Diego breached their duty when they failed to properly treat and diagnose Plaintiff as stated previously in this complaint.

12

61. Prior to his arrest, Plaintiff was not ill and suffered no wounds. After his arrest, Plaintiff suffered severe bite wounds from the SDPD's K-9 unit. Furthermore, Defendants County of San Diego deliberate indifference and or negligent behavior to Plaintiff's injuries after his arrest led to his severe injuries, sepsis, and near amputation.

62. Defendants' negligence is a substantial factor of the harm alleged herein.

63. SDC is vicariously responsible for the acts and omissions by Defendants because Defendants were the agent/employee for SDC and acted within the scope of that agency/employment. The San Diego County employees were negligent in their care of plaintiff as stated above. They did not properly treat the wounds of Mr. Moffit, they did not properly evaluate the seriousness of his wounds, they did not refer him to a higher level of medical care such as having a medical doctor who has the experience in treating serious dog bites, they did not timely have Mr. Moffit taken to a hospital for treatment of his wounds.

64. As a direct and proximate cause of the breach of duty identified, Plaintiff suffered, and continues to suffer, the physical and emotional injuries set forth herein.

65. Plaintiff requires medical treatment to repair the damage and will incur the cost of that treatment.

66. As a direct and proximate result of Defendants' acts or omissions alleged herein, Plaintiff is entitled to an award of compensatory damages for injuries.

67. Thus, Plaintiff suffered in an amount according to proof at trial.

68. As a direct and proximate result of Defendants' acts or omissions alleged herein, Plaintiff has suffered general damages in an amount according to proof at trial.

## VII.
## THIRD CAUSE OF ACTION
## EXCESSIVE FORCE

69. Plaintiff realleges and incorporates by reference all paragraphs above and below as if set forth fully herein.

70. Defendant City of San Diego, by and through the SDPD, Defendant City of San Diego breached that duty by failing to ensure that Plaintiff's apartment was properly searched before allowing the K-9 unit into his apartment. The Canine then rushed to the bedroom of the plaintiff and began to bite and tear at his arm. This was not in compliance with the provisions in the police manual on how to use canine force on suspects. This use constituted excessive force on the Plaintiff. The policy in place concerning the handling of a police dog at the time of the incident was breached. The policy states in relevant part as follows:

71. The Canine handler shall always exercise control over the police service dog. In this case that did not occur. The dog was sent into the apartment when no one knew if anyone was home, if anyone was awake or asleep. No one knew where Mr. Moffitt was. The dog was simply let in the apartment and free to go wherever he/she decided.

72. The handler was to consider the severity of the crime. The handler was also to consider the immediacy of the threat. In this case there was no immediacy of any threat. The underlying alleged incident was over and simply stated, all the police were doing was arrest Mr. Moffit. Also, the handler was to consider if Mr. Moffit was actively resisting arrest. Clearly, in this matter, Mr. Moffit was not actively resisting arrest. He was asleep.

73. As a result of these actions, the Plaintiff suffered serious injuries necessitating significant medical care, hospitalizations, surgeries, and now has significant scarring and loss of function of his arm.

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. For judgment against Defendants for the sum of, interest and costs;
2. For compensatory damages in an amount to be determined according to proof at trial;
3. For general damages according to proof;

14

4. For medical, hospital, and related expenses according to proof;

5. For future medical, hospital, and related expenses according to proof;

6. For past and future loss of income and loss of earning ability;

7. For costs of suit herein incurred;

8. For pre-judgment interest;

9. For reasonable attorney's fees according to proof;

10. For such other and further relief as the court may deem proper.

*LAW OFFICE OF ELLIOTT KANTER*
*A Professional Corporation*

Dated: December 4, 2024        /S/ELLIOTT N. KANTER
                               ELLIOTT N. KANTER
                               Attorney for Plaintiff, JOHN MOFFITT

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon via electronic email:

**Dick A. Semerdjian, County of San Diego**
das@sscelaw.com
Attorney for San Diego County Jail

**Jennifer Marie Martin, San Diego County Counsel**
Jennifer.Martin2@sdcounty.ca.gov
Attorney for San Diego County Jail

**Laura Wilson, San Diego County Counsel**
Laura.wilson@sdcounty.ca.gov
Attorney for San Diego County Jail

**Chad Thurston, Schwartz Semerdjian Cauley Schena & Bush LLP**
chad@sscelaw.com
Attorney for San Diego County Jail

Manuel Arambula
marambula@sandiego.gov
Attorney for City of San Diego and San Diego Police Department

**Elliott N. Kanter**
ekanter@enkanter.com
Attorney for Plaintiff, John Moffit

*LAW OFFICE OF ELLIOTT KANTER*
*A Professional Corporation*

DATED:  December 4, 2024          /S/Elliott N. Kanter
                                  ELLIOTT N. KANTER, ESQ.
                                  Attorney for Plaintiff, John Moffit