# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MOFFITT,<br><br>  Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>  Defendants. | Case No. 24-cv-1445-MMA-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART CITY OF SAN DIEGO'S MOTION TO DISMISS; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART COUNTY OF SAN DIEGO'S MOTION TO DISMISS**<br><br>[Doc. Nos. 12, 13] |

On December 18, 2024, Defendants City of San Diego (including "San Diego Police Department") ("City Defendants") Defendant County of San Diego, e/s/a San Diego County Sheriff's Department and San Diego County Jail ("County Defendants") (collectively, "Defendants") filed respective motions to dismiss Plaintiff John Moffitt's ("Plaintiff") second amended complaint. Doc. Nos. 12–13. Plaintiff filed responses in opposition to each, to which Defendants replied in turn. Doc. Nos. 14–17. The Court found these matters suitable for determination on the papers and without oral argument

pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1 and took them under submission on January 17, 2025.  Doc. No. 18.  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion and **GRANTS IN PART** and **DENIES IN PART** the City Defendants' motion.

## I. Background[1]

On January 1, 2023, Plaintiff was sleeping in his residence when San Diego Police Department officers entered his apartment.  Doc. No. 11 ("SAC") ¶¶ 16, 21.  To gain entry, police had "contacted a manager of the facility," who provided them an electronic key fob.  *Id.* ¶ 45.  The officers, however, did not "assess whether Plaintiff was present, asleep, or awake."  *Id.*  Without searching his apartment, police released a canine unit inside.  *Id.* ¶ 21.  The canine bit Plaintiff, causing him serious bite wounds.  *Id.* ¶ 22–23.  During the officers' attempt to arrest him, Plaintiff "did not threaten the officers, did not lunge at the officers, did not yell or do anything while in the apartment" to indicate that he may be a threat.  *Id.* ¶ 45.

After arresting Plaintiff, the officers transported him to San Diego County Jail.  *Id.* ¶ 24.  Upon his arrival, Plaintiff exhibited open bite wounds to his arm.  *Id.* ¶ 16.  This condition exposed him to infection.  *Id.*  While detained at the county jail, Plaintiff "repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care.  The custodial staff[2] repeatedly denied said requests stating he did not need that care."  *Id.*  Eventually, however, Plaintiff was provided medical care, though "the medical staff did not deem it necessary . . . to send him to the hospital for the care he needed."  *Id.*  Eventually his arm became infected, which led to sepsis.  *Id.* ¶ 26.  Upon becoming septic, "he was finally transferred to an outside medical facility where he

---

[1] Because this matter is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations set forth in the Complaint and draw all inferences in the light most favorable to the nonmovant.  *See Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).

[2] Plaintiff differentiates in his complaint between the custodial staff and medical staff.

was hospitalized for weeks." *Id.* Plaintiff's "arm was nearly amputated, requires further medical attention, and he has suffered severe physical and emotional damage." *Id.* ¶ 27.

Plaintiff initiated this action in state court on December 19, 2023, and Defendants removed this action on August 14, 2024. Doc. No. 1. Defendants subsequently filed motions to dismiss Plaintiff's first amended complaint, which the Court granted on November 13, 2024. Doc. Nos. 3–10. Plaintiff filed a second amended complaint on December 4, 2024, alleging three causes of action: (1) Violation of Civil Rights (42 U.S.C. § 1983); (2) Negligence – Professional; and (3) Excessive Force. SAC ¶¶ 35–73.

## II. L<span>EGAL</span> S<span>TANDARD</span>

A Rule 12(b)(6) motion to dismiss tests a complaint's sufficiency. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998). In

determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### III. Discussion

Defendants move to dismiss each cause of action in Plaintiff's second amended complaint. Doc. Nos. 12–13. Plaintiff opposes dismissal. Doc. Nos. 14–15. In its prior order granting Defendants' respective motions to dismiss the first amended complaint, Doc. Nos. 3–4, the Court dismissed Plaintiff's claims, some with prejudice, and some without. *See generally* Doc. No. 10. Throughout, the Court noted deficiencies in Plaintiff's pleadings including, in several sections, Plaintiff's failure to specify the nature of the claims he brings against Defendants and failure to sufficiently plead his claims against the Doe Defendants. *See id.* at 5–6, 8–11.[3]

Importantly, and as discussed in each respective section, so far as Plaintiff fails to identify the rights he seeks to vindicate or identify the nature of his first and third causes of action, the Court reminds Plaintiff that it is emphatically his duty to provide at least "fair notice of what . . . the claim is and the grounds upon [which] it rests." *Twombly*, 550 U.S. at 554–55 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Reviewing

---

[3] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

Plaintiff's second amended complaint, the Court finds that Plaintiff has largely failed to remedy these issues.

### A.     Doe Defendants

First, Defendants argue, as they did in their first round of motions to dismiss, that Plaintiff "makes improper use of 'Doe' pleadings" by failing to specify how any alleged Doe Defendant acted in a manner that violated his rights. Doc. No. 13-1 at 14; Doc. No. 12 at 9–10. Plaintiff responds that he "identifies the Doe Defendants as employees or agents of the San Diego Police Department and San Diego County Sheriff's Department who participated in or failed to prevent the unconstitutional conduct" and that further investigation will uncover their identities. Doc. No. 14 at 4.

To state a Section 1983 claim, Plaintiff must allege how "each Government-official defendant, through the official's own individual actions" violated his constitutional rights. *See Iqbal*, 556 U.S. at 676–77. Allegations "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976)). The pleadings must show each defendant "[performed] an affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). While a plaintiff may refer to unnamed defendants as "Does" at the pleading stage, this does not relieve them of the requirement that they allege a Doe personally participated in the alleged deprivation of constitutional rights in order to state a complaint against that individual. *See Brink v. Cnty. of San Diego*, No. 23-cv-1756-DMS (SBC), 2024 WL 3315992 *3 (S.D. Cal. July 3, 2024). "A district court should dismiss claims against Doe defendants in a Section 1983 suit when the complaint does not 'even minimally explain how any of the unidentified parties . . . personally caused a violation of [the claimant's] constitutional rights.'" *Id.* (quoting *Estate of Serna v. Cnty. of San Diego*, No. 20-cv-2096-LAB (MSB), 2022 WL 827123,

*3 (S.D. Cal. Mar. 18, 2022)).

In ruling on Defendants' first rounds of motions to dismiss, the Court found that "Plaintiff pleads no facts which allege any Doe personally violated Plaintiff's rights" and granted Defendants' motions to dismiss as to the Doe Defendants accordingly. Doc. No. 10 at 10. Plaintiff has not cured this deficiency. The Court can locate two references to the Doe Defendants' identities in his complaint. The first identifies that Doe Defendants are "agent[s], servant[s], employee[s], or contractor[s] for SDMSD and the City of San Diego" and that they were acting in that scope during the events described. SAC ¶ 17. The second comes in Plaintiff's second cause of action for negligence, stating that "Defendant's employees and agents whose names are currently unknown and will be added as DOES had a duty to use such skill, prudence, and diligence as other members of the profession commonly possess . . . ." *Id.* ¶ 58. What Plaintiff does not allege, however, is what role any individual Doe Defendant played in any event or action he describes in the Second Amended Complaint. He does not allege whether they are officers who allegedly handled and released the canine, jail custodial staff who denied his requests for care, jail medical staff, or anonymous participants in acts yet unknown. As to his negligence claim, Plaintiff does no better. As discussed above, if proceeding against defendants of unknown names Plaintiff may use the "Doe" moniker. However, he must still plead with some specificity how that particular defendant violated his rights if he seeks to bring a claim against them individually. *Est. of Arroyo by & through Wilson v. Cnty. of San Diego*, No. 3:21-cv-01956-RBM-SBC, 2024 WL 1627221 *8 (S.D. Cal. Apr. 15, 2024). He does not do so here.

As Plaintiff has not cured the deficiencies identified in the Court's previous order, the Court **GRANTS** Defendants' respective motions to dismiss as to the Doe Defendants and **DISMISSES** Plaintiff's claims against the Doe Defendants **without prejudice**.

B.  **Violation of Civil Rights, 42 U.S.C. § 1983 (Claim One)**

Both City Defendants and County Defendants move to dismiss Plaintiff's first claim on the grounds that he insufficiently pleads a cause of action under 42 U.S.C

§ 1983, and that he fails to sufficiently plead an excessive force claim against City Defendants and constitutionally inadequate medical care against County Defendants, respectively. Doc. No. 12 at 4–8; Doc. No. 13-1 at 9–12. In its prior dismissal order, the Court found that:

> Plaintiff's allegations in Claim One could form the basis for either an inadequate medical care claim or an excessive force claim. More confusingly, Plaintiff's Opposition to City Defendants' Motion to Dismiss argues that the FAC states a § 1983 claim because SDPD "deprived Plaintiff of his constitutional right to unlawful searches and seizures," which would be a Fourth Amendment claim. Doc. No. 5 at 4. Plaintiff must provide more clarity regarding the constitutional basis for Claim One in order to plausibly allege a § 1983 claim.

Doc. No. 10 at 6. The Court then construed his claim, as County Defendants do, as a claim for constitutionally inadequate medical care against County Defendants. *Id.*

Upon repleading, Plaintiff somewhat remediates this issue—though not wholly. *See* SAC ¶ 35–55. Plaintiff still fails to explicitly plead what rights he seeks to vindicate, merely titling the action Violation of Civil Rights (42 U.S.C. § 1983)[4] and referencing the Fourteenth Amendment in a cursory manner. SAC ¶¶ 48. However, it does appear from his pleadings that Plaintiff attempts to allege constitutionally inadequate medical care during his confinement against County Defendants. FAC ¶¶ 12–19, 47–50. As County Defendants brief the issue in its motion and Plaintiff responds accordingly, the Court will analyze Claim One as a Fourteenth Amendment inadequate medical care claim. *See* Doc. No. 13-1 at 9–12; Doc. No. 15. Based upon this pleading, and because Plaintiff has not

---

[4] As the Court discussed previous order, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 40 U.S. 386 U.S. 386, 393–94 (1989) (internal quotation marks omitted). Rather, title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

made any other meaningful changes to his complaint in this respect, the Court **DISMISSES** this claim to the extent he seeks to press any other constitutional violations.

County Defendants argue that Plaintiff does not sufficiently plead that he received constitutionally inadequate medical care, nor does he successfully plead municipal liability. Doc. No. 13-1 at 8–12. Plaintiff counters that he sufficiently pleads that County Defendants unconstitutionally denied his requests for medical care, that he establishes a custom or policy of unconstitutional medical care as evidenced by several outside sources regarding the County's jail system, and that he sufficiently demonstrates a causal nexus between the two. Doc. No. 15 at 2–3.

To allege liability against a municipal entity, like County Defendants, under Section 1983, Plaintiff must first sufficiently allege that his constitutional rights were violated. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (*per curiam*). When examining allegations of inadequate medical care in pre-trial detention, the Fourteenth Amendment governs a plaintiff's substantive rights. *See Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1123–24 (9th Cir. 2018); *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).[5] As such, Plaintiff must demonstrate that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125 (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070–71 (9th Cir. 2016) (cleaned up); *see Sandoval*, 985 F.3d at 669. "The 'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under

---

[5] For this reason, the Court dismissed with prejudice any inadequate medical claims Plaintiff attempts to bring under the Eighth Amendment. Doc. No. 10 at 6.

the Fourteenth Amendment.' Thus, the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.*

Though he does not identify the Doe Defendants sufficient to plead individual liability against them, presuming that through discovery Plaintiff can identify—to some specificity— the custodial staff with whom he interacted, the Court finds that Plaintiff pleads a violation of his Fourteenth Amendment rights. For clarity, the Court will discuss the elements in somewhat different order. Plaintiff alleges that he suffered "serious bite wounds" from a police canine bite during his arrest. SAC ¶ 23. After his arrest, he was "was brough[t] into the county jail facility with open wounds to his injured arm. This condition exposed him to the infections that occurred and ultimately resulted in extensive hospitalizations." SAC ¶ 16. Plaintiff "repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care." *Id.* Ultimately, lack or delay of treatment caused sepsis, requiring hospitalization and near amputation. *Id.* ¶¶ 25–27. From these factual allegations, the Court finds that Plaintiff plausibly alleges that his wounds were sufficiently serious to the reasonable prison official and that it was obvious that serious consequences would follow for failing to treat them immediately. Plaintiff also alleges that "[h]e repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care" but that "[t]he custodial staff repeatedly denied said requests stating he did not need that care." SAC ¶ 16; *see also* SAC ¶ 49. Despite the seriousness of his injury custodial staff initially denied and, ultimately, substantially delayed sending him to a hospital though it was necessary to do so. *Id.* Through these allegations, Plaintiff sufficiently pleads the third element. *See Gordon*, 888 F.3d at 1125; *Sandoval*, 985 F.3d at 670; *see also Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (finding, in the Eighth Amendment context, that intentionally delaying care can amount to deliberate indifference to constitutional rights); *Trejo v. Cnty. of Imperial*, No. 20-CV-1465-LAB-DDL, 2023 WL 4194442 *6 (S.D. Cal. June 26, 2023) ("A custom or practice of delaying medical care can constitute deliberate indifference to . . . constitutional rights.").

Throughout the events, custodial staff made several conscious decisions as to Plaintiff's condition and care, including that "[t]he custodial staff repeatedly denied" his requests for care and initially failed to send him to a hospital. SAC ¶ 16, 49. This satisfies the first element. Because of this denial, Plaintiff's wounds became infected. *Id.* ¶ 25. These allegations—that the failure to provide him medical care placed him in a position for his wound to worsen and become infected—also satisfy the second element. *See Gordon*, 888 F.3d at 1125; *see, e.g.*, *Sandoval*, 985 F.3d at 670. Finally, Plaintiff alleges that the delay in care and initial refusal to send him to the hospital caused infection, sepsis, later hospitalization, and "near amputation." SAC ¶¶ 23–27, 49. Thus, Plaintiff pleads the fourth element.

However, to state a claim against a municipal entity under Section 1983, Plaintiff must plausibly allege that: (1) he was deprived of a constitutional right; (2) the County has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom or practice was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). Municipal entities like County Defendants cannot be held liable under Section 1983 through *respondeat superior*. *Monell*, 436 U.S. at 691; *see also Bagdasaryan v. City of Los Angeles,* No. 215CV01008JLSKES, 2020 WL 2770193 *14 (C.D. Cal. Feb. 4, 2020), *R.&R. adopted*, No. 215CV01008JLSKES, 2020 WL 2770689 (C.D. Cal. Mar. 24, 2020).

> [A] local government body can be held liable under § 1983 for policies of inaction as well as policies of action . . . . In inaction cases, the plaintiff must show, first, that [the] policy amounts to deliberate indifference to the plaintiff's constitutional right. This requires showing that the defendant was on actual or constructive notice that its omission would likely result in a constitutional violation. Second, the plaintiff must show that the policy caused the violation in the sense that the municipality could have prevented the violation with an appropriate policy.

*Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (internal citations and quotation

marks omitted).

A plaintiff must "specify the content of the policies, customs, or practices the execution of which gave rise to [his or her] Constitutional injuries." *Estate of Kong v. City of San Diego*, No. 22-cv-1858-BAS (DDL), 2023 WL 4939370, at *5 (S.D. Cal. Aug. 2, 2023) (quoting *La v. San Mateo Cnty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224 (N.D. Cal. Sept. 16, 2014) (internal quotation marks omitted)). "A custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

As discussed above, Plaintiff sufficiently pleads a Fourteenth Amendment violation, and thus he has adequately pleaded the first element for municipal liability. While the County Defendants focus on several conclusory statements within Plaintiff's SAC regarding medical policies, Doc. No. 13-1 at 9–10, Plaintiff elucidates on the policy he alleges at length: in summary, policies or customs that amount to chronically understaffing county jails, inadequate screening of detainees with medical needs (caused by understaffing), and the use of staff without medical training to make medical decisions related to screening and care—including who is sent to see medical providers. SAC ¶¶ 13–15, 49. Plaintiff supports these allegations by further alleging that these practices have led to dozens, if not more, of inmate deaths in San Diego County jails due to "systemic deficiencies" within the past several years. *Id.* ¶¶ 12–15. Specifically, Plaintiff points to a report by the California State Auditor and a letter by nurses within one such facility to the jail's civilian oversight board substantiating (at least, as alleged) these issues. *Id.* The Auditor's report, according to Plaintiff, includes findings that:

> 'the Sheriff's Department has failed to adequately prevent and respond to the deaths of individuals in its custody . . . that 'systemic deficiencies' in Jail policies and practices for 'intake screenings, medical and mental health care, safety checks, and responses to emergencies likely contributed to these deaths' . . . [and] that until meaningful changes are made, "the weaknesses in

> [the Sheriff's Department's] policies and practices will continue to jeopardize the health and lives of the individuals in its custody.

SAC ¶ 13. Likewise:

> [The] October 2021 letter from the Service Employees International Union . . . Local 221, which represents Jail health care workers, to the Citizens Law Enforcement Review Board . . . explained that understaffing created 'dangerous and inhumane' conditions for incarcerated people and medical staff alike. As of late 2021, 216 medical positions at the Jail—more than 41% of authorized positions—remained vacant, and existing medical staff have been on mandatory overtime for weeks. Compounding the problem, custody staff, rather than health care professionals, can and do make final decisions about the health care services that incarcerated people receive. People at the Jail are not adequately screened for medical needs and do not timely receive essential medication or treatment.

SAC ¶ 15. "All of these conditions existed when Mr. Moffit was incarcerated in the county jail in or around January of 2023." *Id.* These allegations describing such past incidents are sufficient to plead that County Defendants were put on notice that its policies were likely to cause constitutional injury through evidence of past such incidents and County staff's knowledge of systemic deficiencies.

In sum, Plaintiff alleges a series of failures caused by a custom or policy of understaffing medical personnel at the County's jail facilities. *Id.* ¶ 15. These types of allegations of understaffing and a resulting systemic failure to provide care are cognizable as a policy or custom for which Plaintiff can attach the County's liability. *See, e.g.*, *Trejo*, 2023 WL 4194442 at *6 (citing *Oyenik v. Corizon Health Inc.*, 696 F. Appx. 792, 794 (9th Cir. 2017)); *Anderson v. City of Atlanta*, 778 F.2d 678, 685–87 (11th Cir. 1985); *Burke v. Regalado*, 935 F.3d 960, 1000–01 (10th Cir. 2019) (Eighth Amendment supervisory liability context).

Plaintiff also sufficiently alleges that these policies of understaffing and inadequate medical screening were the "moving force" behind his constitutional violation. *See Dougherty*, 654 F.3d at 900. He first alleges that the policies described above were still

in place when he arrived at the county jail. SAC ¶ 15. "[W]hen he complained that his serious dog bite injuries were getting worse, the sheriff's ignored him, then delayed access to medical treatment." *Id.* ¶ 49. Taking all inferences in Plaintiff's favor, as it must at this stage, he alleges he received an inadequate medical screening. This inference is likewise warranted by Plaintiff's statement that he "repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care. The custodial staff repeatedly denied said requests stating he did not need that care." *Id.* ¶ 16. Making an inference in Plaintiff's favor, he sufficiently connects this to allegations that non-medical staff were conducting medical screenings, exceeding acceptable duties in doing so. *Id.* at ¶ 16, 49. Plaintiff's argument, in sum, is that:

> As stated in [SAC] paragraphs 14-17 Defendant[s'] policy in treating injured prisoners was clearly either intentional or acts of deliberate indifference to plaintiff's constitutional right. In [Plaintiff's] case . . . when he complained that his serious dog bite injuries were getting worse, the sheriff[]s ignored him, then delayed access to medical treatment. Once he was provided access to medical treatment, his injuries were significantly worse. Still, when he saw any medical provider, they did not provide adequate care, nor did they timely send him to the hospital.

SAC ¶ 49.

Thus, the Court determines that Plaintiff sufficiently pleads a Fourteenth Amendment inadequate medical care claim against the County Defendants and therefore **DENIES** County Defendants' motion to dismiss to that extent.

C.   **Negligence – Professional (Claim 2)**

As it dismissed the entirety of Plaintiff's federal claims in its previous order, the Court previously declined to exercise jurisdiction on his negligence claims. Doc. No. 10 at 11–12. Because Plaintiff's inadequate medical care claim now remains against County Defendants, the Court will address this claim as well. At the outset, Plaintiff titles this action as "Negligence – Professional," and states that "[Defendants'] employees and agents whose names are currently unknown and will be added as DOES had a duty to use

such skill, prudence, and diligence as other members of the profession commonly possess and exercise when arresting Plaintiff and when diagnosing and treating Plaintiff." SAC ¶ 58. However, Plaintiff cites only to California's general negligence statute, California Civil Code § 1714(a). *Id.* ¶ 57. Both County and City Defendants address this claim as one for common-law negligence. Doc. No. 12 at 9; Doc. No. 13-1 at 12–13. Plaintiff, in his oppositions states that he establishes negligence claims under California Civil Code § 1714." Doc. No. 14 at 5. Thus, the Court will analyze this claim as one arising as a claim of negligence under section 1714.

Defendants move to dismiss Plaintiff's negligence claim on the grounds that, in effect, the claim is one for common law negligence and that both County Defendants and City Defendants are immune from such liability absent specific statutes to the contrary. Doc. No. 12 at 8–9; Doc. No. 13-1 at 12–13. Plaintiff does not appear to cite contrary legal authority in response but argues that he adequately pleads the elements of a negligence claim pursuant to the duty imposed by California Civil Code § 1714. *See* Doc. No. 15 at 4; Doc. No. 14 at 5. County Defendants also argue that Plaintiff fails to plead an applicable exception to law providing immunity for injury to prisoners. Doc. No. 13-1 at 13–14.

Section 1714 provides California's general tort duty: that each person has a duty not to act negligently with respect to their own actions. *Bousman v. Cnty. of San Diego*, No. 3:23-CV-1648-W-JLB, 2024 WL 1496220 at *10 (S.D. Cal. Apr. 5, 2024); Cal. Civ. Code § 1714(a) ("Everyone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ."). California Government Code § 820 further provides that "[e]xcept as otherwise provided by statute . . . a public employee is liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov. Code § 820(a); *Bousman*, 2024 WL 1496220 at *10. Additionally, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a

cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2(a); *Bousman*, 2024 WL 1496220 at *10. Together, these statutes "provide a basis for negligence liability against public employees, and vicarious liability for public entities for negligent acts by their employees that occur within the scope of their employment." *Lallemand v. Cnty. of Los Angeles*, No. LACV1700781JAKSSX, 2018 WL 6136816 *9 (C.D. Cal. June 12, 2018).

As to City Defendants, while it is true that a plaintiff must identify a specific statute to allege direct liability against a municipal entity, public entities are still vicariously—rather than directly—liable for "employee[s'] negligent acts or omissions within the scope of employment . . . ." *Eastburn v. Reg'l Fire Prot. Auth.*, 80 P.3d 656, 658 (Cal. 2003); *see also Lallemand*, 2018 WL 6136816 at *9. Plaintiff is clear in his SAC that he seeks to hold the City Defendants vicariously liable for the on-duty actions of their police officers while arresting Plaintiff. *See, e.g.*, SAC ¶¶ 61–66. Thus, at this juncture, City Defendants' arguments cannot defeat Plaintiff's negligence claims. *See, e.g.*, *Chambers v. Cnty. of Los Angeles*, No. 221CV08733MCSJEM, 2022 WL 19076765 * 15 (C.D. Cal. Dec. 12, 2022); *see also Golick v. State of California*, 299 Cal. Rptr. 3d 238–240 (Cal. Ct. App. 2022) (collecting cases in which police officers were subject to negligence tort liability).

Turning to County Defendants, California law provides that, absent enumerated exceptions, "a public entity is not liable for an injury to any prisoner." Cal. Gov. Code § 844.6(a)(2). However, "a public employee, and the public entity where the employee is acting within the scope of [their] employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and . . . fails to take reasonable action to summon such medical care." *Id.* at § 845.6 (excepting certain situations involving mental illness and addiction). As the *Bousman* court concludes:

> (1) public entities cannot be held liable for wrongfully or negligently injuring prisoners but public employees can be; unless (2) the prisoner's injury resulted from a failure to furnish medical care (in which case, neither the public

employee or public entity are liable); except (3) when the public employee knew or had reason to know that the injured prisoner was in need of immediate medical care and failed to take reasonable action to summon such medical care (in which case, both the public employee and the public entity are liable).

*Bousman*, 2024 WL 1496220 at *11; *see also Villarreal v. Cnty. of Monterey*, 254 F. Supp. 3d 1168, 11187 (N.D. Cal. 2017) ("a public entity or public employee is liable for an injury proximately caused to a prisoner where: (1) the employee is acting within the scope of [their] employment, (2) the employee knows or has reason to know that the prisoner is in need of immediate medical care, and (3) [they] fail[] to take reasonable action to summon such medical care.") (internal quotation marks omitted); *Castaneda v. Dep't of Corr. & Rehab.*, 151 Cal. Rptr. 3d 648, 663 (Cal. Ct. App. 2013).

As discussed in assessing his first cause of action, Plaintiff alleges that he suffered "serious bite wounds" from a police canine during his arrest. SAC ¶ 23. After his arrest, he was "was brough[t] into the county jail facility with open wounds to his injured arm. This condition exposed him to the infections that occurred and ultimately resulted in extensive hospitalizations." SAC ¶ 16. While in custody, he "repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care." *Id.* Plaintiff also alleges that "[h]e repeatedly asked for the custodial staff to advise the medical staff that he needed emergency medical care" but that "[t]he custodial staff repeatedly denied said requests stating he did not need that care." SAC ¶ 16; *see also* SAC ¶ 49. Lack of treatment to his wounds caused sepsis, requiring hospitalization and near amputation. *Id.* ¶¶ 25–27

At the pleadings stage, the Court finds that Plaintiff sufficiently alleges that his wounds were serious enough that certain jail custodial staff, acting in their capacity as such, knew or had reason to know that he needed immediate medical care but failed to take reasonable action to summon such medical care. Reviewing the cases the County Defendants cite in their motion, none direct another result. *Cf. Scalia v. Cnty. of Kern*, 308 F. Supp. 3d 1064, 1084–88 (E.D. Cal. 2018) (discussing the evolution of case law

concerning Cal. Civ. Code § 845.6); *Castaneda*, 151 Cal. Rptr. 3d at 663–66. Therefore, assuming that, through discovery, Plaintiff can identify—to some specificity—the custodial staff who failed to take reasonable action to summon care, the Court finds that he sufficiently pleads this claim. For these reasons the Court **DENIES** Defendants' motions to dismiss Plaintiff's negligence claim so far as he brings a case for negligence under California Civil Code § 1714.

**D.    Excessive Force – (Claim 3)**

As with his prior complaint, Plaintiff does not specifically mention Section 1983 as providing the vehicle for pursuing an excessive force claim via Claim Three. *Compare* Doc No. 1-2 at 10–11, *with* SAC at 13–14. However, a Fourth Amendment excessive force claim is brought pursuant to Section 1983, and the Court analyzed this claim as such on the first round of motions to dismiss. Doc. No. 10 at 8–9. Plaintiff alleges City Defendants used excessive force during his arrest when they set loose a canine in his apartment without searching it beforehand, leading the canine to bite and seriously injure Plaintiff's arm. *See* SAC ¶¶ 21–23, 69–73. Plaintiff does not make any specific allegations against County Defendants.

City Defendants argue that Plaintiff has not met his burden to plausibly allege liability, as he does not specify a right he believes was violated, does not state a cause of action for a Fourth Amendment excessive force claim, and insufficiently pleads *Monell* liability regardless. Doc. No. 12 at 4–10. Plaintiff responds that he sufficiently pleads an unreasonable use of force, and that he demonstrates *Monell* liability by pleading that "the San Diego Police Department (SDPD) and its officers failed to adhere to mandatory policies regarding the deployment and handling of police canines, resulting in severe injuries to the Plaintiff." Doc. No. 14 at 2–5. Plaintiff also argues that he "references repeated misconduct, prior incidents, and failures to discipline officers, demonstrating a pervasive unconstitutional custom that led directly to Plaintiff's injuries," and that he sufficiently argues a failure to train theory. *Id.* at 7.

To state a claim for Section 1983 liability against a municipal entity, Plaintiff must

show: (1) he was deprived of a constitutional right; (2) the County has a policy, custom or practice which amounted to deliberate indifference to that constitutional right; and (3) the policy, custom or practice was the moving force behind the constitutional violation. *Dougherty*, 654 F.3d at 900–01 (citing *Monell*, 436 U.S. at 694). "[L]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Municipalities cannot be held liable under Section 1983 through *respondeat superior*. *Monell*, 436 U.S. at 691.

Plaintiff alleges the arresting officers' actions were not in compliance with the Canine Manual's provisions use of police dogs in arrests. SAC ¶ 70–72. However, he has not pleaded sufficient facts to plausibly allege City Defendants have a policy, custom, or practice of not complying with the Canine Manual such that this noncompliance amounts to, itself, the actual custom, policy, or practice in place regardless of a formal policy. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970); *Trevino*, 99 F.3d at 911 ("The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'") (internal citations omitted). Contrary to arguments in his opposition, Plaintiff does not plead any past incidents in which officers have departed from official canine use policy, nor does he allege any facts to this point beyond the events of Plaintiff's arrest. Instead, he alleges merely that the officers violated the City's Canine Manual—ostensibly the City's relevant operative formal policy—and that because they did so, City Defendants are liable. SAC ¶¶ 70–73; *see also* Doc. No. 14 at 2. That is exactly backwards, and the Court identified this same issue in its prior order. *See* Doc. No. 10 at 8–9. Thus, the Court **GRANTS** City Defendants' motion to dismiss as to Plaintiff's third cause of action.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' respective motions to dismiss. Dismissal is **without prejudice and with leave to amend**. Any third amended complaint will be the operative pleading and must be filed on or before **March 3, 2025**. Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any claim not re-alleged and any defendant not named in the third amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that after dismissal with leave to amend, claims may be "considered waived if not repled"). The third amended complaint must be accompanied by a version of that pleading that shows—through redlining or similar method—how that pleading differs from the previously dismissed pleading. *See* CivLR 15.1.c.

Additionally, the Court cautions Plaintiff that any further failure to cure these deficiencies may result in dismissal of his claims without leave to amend.

**IT IS SO ORDERED**.

Dated: February 10, 2025

HON. MICHAEL M. ANELLO
United States District Judge