1

2

3

4

5

6

7

8

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 JOHN MOFFITT,

Case No. 24-cv-1445-MMA-DDL

13                    Plaintiff,

**NOTICE AND ORDER PROVIDING**

14 v.

**TENTATIVE RULINGS RE: DEFENDANT'S MOTION TO**

15 COUNTY OF SAN DIEGO, et al.,

**DISMISS**

16              Defendants.

[Doc. No. 22]

17

18

19      On May 7, 2025, Plaintiff John Moffitt ("Plaintiff") and Defendant City of San

20 Diego ("the City") will appear before the Court for a hearing on the City's motion to

21 dismiss Plaintiff's Third Amended Complaint.  Doc. No. 22.  In anticipation of the

22 hearing, the Court issues the following tentative ruling **GRANTING IN PART** and

23 **DENYING IN PART** the City's motion.

24      As a preliminary matter, municipal departments and sub-units, including police

25 departments, are generally not considered "persons" within the meaning of Section 1983.

26 *See Hervey v. Estes*, 65 F.3d 784, 791–92 (9th Cir. 1995) (Finding that because an

27 intergovernmental narcotics taskforce was not a itself a municipality or independent local

28 governmental entity, but instead a municipality or local governmental entity's creation, it

1  was "only subject to suit if the parties that created [it] intended to create a separate legal

2  entity."); *United States v. Kama*, 394 F.3d 1236, 1239–40 (9th Cir. 2005) (Ferguson, J.,

3  concurring) (noting local government departments and bureaus are generally not

4  considered "persons" within the meaning of § 1983).  As such, neither the San Diego

5  County Sheriff's Department, San Diego County Jail, nor San Diego Police Department

6  appear to be proper parties. *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995–96

7  (C.D. Cal. 1996).  The Court thus tentatively **DISMISSES WITH PREJUDICE** claims

8  as to the San Diego County Sheriff's Department, San Diego County Jail, and San Diego

9  Police Department.

10  Turning to its motion, the City moves to dismiss Plaintiff's Third Amended

11  Complaint insofar as he asserts claims against it.  Doc. No. 22.  It likewise moves to

12  dismiss Plaintiff's claims against the Doe Defendants. *Id.* at 9–10.  The City argues that

13  Plaintiff's first and third causes of action—at least as alleged against the City—are truly a

14  single cause of action for excessive force in violation of Plaintiff's Fourth Amendment

15  rights. *Id.* at 4. [1]  The Court addressed this issue in previous orders and came to that the

16  same conclusion. *See* Doc. No. 19 at 6–7, 17.  In his TAC, Plaintiff still does not remedy

17  or clarify the matter.  Therefore, the Court will again construe the two causes of action, as

18  relevant to the City, as a single claim for excessive force in violation of Plaintiff's Fourth

19  Amendment rights brought under 42 U.S.C. § 1983.

20  **1.      Doe Defendants**

21  The City moves to dismiss Plaintiff's claims against the Doe Defendants on the

22  grounds that the TAC fails to allege how each Doe Defendant "personally violated

23  [Plaintiff's] constitutional rights" or behaved in a manner allowing liability.  Doc. No. 22

24  at 9.  While Plaintiff may refer to unnamed defendants as "Does" at the pleading stage, he

25  must still allege that Doe defendants personally participated in the alleged deprivation of

26

27
28
[1] The Court has, in prior orders, determined that Plaintiff's claims concerning his medical treatment in jail are asserted against the County of San Diego ("County") and County employees.  Doc. No. 19 at 7.  As the County did not file a motion to dismiss, the Court will not discuss those claims.

1  constitutional rights. *See Brink v. Cnty. of San Diego*, No. 23-cv-1756-DMS (SBC),

2  2024 WL 3315992 *3 (S.D. Cal. July 3, 2024). "A district court should dismiss claims

3  against Doe defendants in a Section 1983 suit when the complaint does not 'even

4  minimally explain how any of the unidentified parties . . . personally caused a violation of

5  [the plaintiff's] constitutional rights.'" *Id.* (quoting *Estate of Serna v. Cnty. of San Diego*,

6  No. 20-cv-2096-LAB (MSB), 2022 WL 827123, *3 (S.D. Cal. Mar. 18, 2022)).

7            In his TAC, Plaintiff describes the relevant Doe Defendants as follows:

8

9         At all relevant times, Defendant Officers, employed by the San Diego Police
          Department, [were] actively involved in executing the arrest of Plaintiff . . . at
10        his residence.  Defendant Officers had direct control over the deployment of
          a police canine and made the affirmative decision to release the dog into
11        Plaintiff's apartment . . . .

12

13  Doc. No. 20 ("TAC") ¶ 20.  He expands on the referenced events described in detail. *Id.*

14  ¶¶ 22–24, 46.  Plaintiff also identifies as Doe Defendants medical and custodial

15  employees in the County Jail, who he alleges violated his Fourteenth Amendment

16  rights—a claim not dealt with here, with similar particularity.  TAC ¶ 20.  Though not a

17  pinnacle of clarity, the Court tentatively finds that this sufficiently identifies how the Doe

18  Defendants each violated his rights or incurred liability.

19            The Court will also address the City's arguments insofar as it asserts that Plaintiff

20  fails to state a claim for excessive force against the Doe Defendants. *See* Doc. No. 22 at

21  4–7.  Claims that an officer used excessive force are analyzed under the Fourth

22  Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386,

23  388, 394–95 (1989).  Courts in the Ninth Circuit: (1) assess the severity of the intrusion

24  on the individual's Fourth Amendment rights by evaluating the type and amount of force

25  inflicted; (2) evaluate the government's interest in the use of force; and (3) "balance the

26  gravity of the intrusion on the individual against the government's need for that

27  intrusion." *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Miller*

28  *v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).  Though the most important factor is

1  whether the plaintiff "posed an immediate threat to the safety of the officers or others,"

2  the Court must consider the totality of the circumstances.  *Mattos v. Agarano*, 661 F.3d

3  433, 441, 449 (9th Cir. 2011); *see also Glenn.*, 673 F.3d at 872.  Reasonableness "must

4  be judged from the perspective of a reasonable officer on the scene, rather than with the

5  20/20 vision of hindsight[,]" and cannot consider an officer's subjective intentions.

6  *Graham*, 490 U.S. at 396–97; *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 428 (2017).

7      Plaintiff alleges that when officers arrived at his apartment late at night, he was

8  asleep.  TAC ¶ 46.  He also alleges that at no point did he "threaten the officers, . . . lunge

9  at the officers . . . or do anything while in the apartment" that put the officers at risk.  *Id.*

10  Despite this, he alleges that officers released a canine unit without "assess[ing] whether

11  the plaintiff was present . . . asleep, or awake," or announcing themselves in way that

12  would not warn or awaken" him before releasing the canine unit.  *Id.*  Once released, the

13  canine bit him, causing severe bite wounds.  *Id.* ¶¶ 24–27, 46, 62.  At a motion to dismiss,

14  the Court must assume the truth of all factual allegations and must construe them in the

15  light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d

16  336, 337–38 (9th Cir. 1996). [2]  Here, the Court tentatively finds that Plaintiff sufficiently

17  pleads that officers' use of force in effecting his arrest was unreasonable in light of the

18  circumstances.  Thus, the Court tentatively **DENIES** the City's motion on that basis.

19  **2.      Municipal Section 1983 Liability**

20      The City also moves to dismiss Plaintiff's excessive force claim against it.  Doc.

21  No. 22 at 4.  To seek damages against a municipality under § 1983, Plaintiff must allege

22  that: (1) he was deprived of a constitutional right; (2) the City has a policy, custom or

23  practice which amounted to deliberate indifference to that constitutional right; and (3) the

24  policy, custom or practice was the moving force behind the constitutional violation.  *See*

25

26  [2] The City cites *Vera Cruz v. City of Escondido* to argue that Plaintiff must plead facts as to the crime for
which officers sought his arrest.  Doc. No. 22 at 7 (citing 139 F.3d 659 (9th Cir. 1997), *as amended on*

27  *denial of reh'g and reh'g* en banc (Mar. 31, 1998)); Doc. No. 27 at 4–5.  The Court does not share this
reading.  *See also Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (partially overturning *Vera*

28  *Cruz*).

1    *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011); *Monell v.*

2    *Department of Social Services*, 436 U.S. 658, 694 (1978)).  As with his past pleadings,

3    Plaintiff's claim against the City relies on allegations that the arresting officers' actions

4    were not in compliance with the San Diego Police Department Canine Manual's

5    provisions for use of police dogs in arrests.  TAC ¶ 70–74.  However, the Court

6    tentatively finds he has not pleaded sufficient facts to plausibly allege the City has a

7    policy, custom, or practice of not complying with the Canine Manual such that this

8    noncompliance amounts to, itself, the actual custom, policy, or practice in place.  *See*

9    *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167–68 (1970); *Trevino v. Gates*, 99 F.3d

10   911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250

11   F.3d 729 (9th Cir. 2001).  ("The custom must be so 'persistent and widespread' that it

12   constitutes a 'permanent and well settled city policy.'") (internal citations omitted).

13          Plaintiff's only relevant addition to this claim in the TAC is one paragraph alluding

14   to "a substantial number of complaints and lawsuits [against the city] concerning the use

15   and control of canine units in the field" and, in broad strokes, the underlying problems

16   drawing those complaints.  TAC ¶ 40.  "While a complaint . . . does not need detailed

17   factual allegations . . . [it] requires more than labels and conclusions, and a formulaic

18   recitation of the elements . . . will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

19   (2007) (internal quotations, brackets, and citations omitted).  The Court tentatively finds

20   this is insufficient as Plaintiff provides no details as to how many complaints or lawsuits

21   he is referencing and provides no insight as to how many individuals within the

22   department "know of this issue," or where they fall in the chain of command.  TAC ¶ 40.

23   Likewise, despite his arguments in opposition, the Court tentatively finds no indication

24   that Plaintiff pleads facts to support a theory that the City fails to train officers to an

25   extent that constitutes a policy or custom of inadequate training.  *See* Doc. No. 26 at 2.

26          Additionally, it tentatively appears that Plaintiff provides no facts alleging that any

27   City policy is the moving force behind the violation he alleges.  *Dougherty*, 654 F.3d at

28   900–01.  Therefore, the Court tentatively finds Plaintiff fails to plead an excessive force

1    claim against the City.  And because Plaintiff has been unable, after three iterations, to

2    plead a plausible claim against the City, the Court tentatively finds that leave to amend

3    would be futile.  Accordingly, the Court tentatively **GRANTS** the City's motion, and

4    tentatively **DISMISSES with prejudice** Plaintiff's excessive force claim against the

5    City.

6    **3.    State Law Claims (Claim 2)**

7        In its motion the City, in two sentences preceding its "Argument" section, asserts

8    that "Plaintiff's [s]econd [c]ause of [a]ction for Professional Negligence is . . . is

9    improperly pled because it assumes that police officers, as opposed to [canines], must

10   search an area before releasing a K-9 . . . ."  Doc. No. 22 at 3.  It makes no further

11   argument, except to state that "[a]s a general matter, the use of police canines to search

12   for and apprehend fleeing or concealed suspects is long-standing and widespread, and is

13   lawful."  *Id.*[3].  However, the City dedicates a majority its reply to arguments that

14   Plaintiff: fails to state a cause of action for negligence; failed to provide it notice of the

15   claims against it; and is required to plead facts as to why officers sought his arrest.  Doc.

16   No. 27 at 3–5.  The City also raises state-law immunity issues for the first time in its

17   reply.  *Id.*

18       First, the Court already found that Plaintiff had sufficiently pleaded and could

19   proceed with this claim against the City.  Doc. No. 19 at 13–17.  And to the extent the

20   City raises new arguments in reply, the Court tentatively finds it would be unfair to reach

21   these arguments as Plaintiff has not had an adequate opportunity to respond.

22       Even if the Court reaches the merits of these newly raised arguments, the Court

23   tentatively finds that the City is not entitled to dismissal of this claim.  Plaintiff alleges a

24   negligence claim consonant with California Civil Code § 1714, establishing a cause of

25   action against harm caused by anyone failing to exercise "ordinary care or skill in the

26   management of his or her property or person . . . ."  TAC ¶ 58 (citing Cal. Civ. Code §

27

28   [3] The case that the City cites in support did not, however, find that use of a police canine is *per se* reasonable use of force. *Koistra v. Cnty. of San Diego*, 310 F. Supp. 3d 1066, 1083 (S.D. Cal. 2018).

1714); Doc. No. 26 at 6.  The Court addressed this claim at length in its prior order and

sees no reason to reverse itself.  Doc. No. 19 at 13–17.

Moreover, while a plaintiff must identify a specific statute to allege direct liability

against a municipal entity, public entities are still vicariously—rather than directly—

liable for "employee[s'] negligent acts or omissions within the scope of employment

. . . ."  *Eastburn v. Reg'l Fire Prot. Auth.*, 80 P.3d 656, 658 (Cal. 2003); *Lallemand v.*

*Cnty. of Los Angeles*, No. LACV1700781JAKSSX, 2018 WL 6136816 *9 (C.D. Cal.

June 12, 2018); Cal. Gov. Code § 820(a).  Plaintiff sufficiently alleges that the claim is

brought against the City through the allegedly negligent acts of its employees in effecting

his arrest, leading to injury—allegations sufficient to invoke vicarious liability.  TAC

¶ 17, 31, 60; *see also* Doc. No. 26 at 6.  Relevantly, it is also well established that "police

officers have a duty in tort to act reasonably when employing deadly force against a

suspect."  *Golick v. State of California*, 299 Cal. Rptr. 3d 229, 239 (Cal. Ct. App. 2022);

*Hayes v. Cnty. of San Diego*, 305 P.3d 252, 255–56 (Cal. 2013).  Therefore, the Court

tentatively **DENIES** the City's motion as to this claim.

As these rulings are tentative, the Court looks forward to counsel's arguments.

**IT IS SO ORDERED**.

Dated:  April 28, 2025

HON. MICHAEL M. ANELLO
United States District Judge